```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
KHATUNA BATLIDZE,                         :
                    Plaintiff,            :
                                          :        05 Civ. 86 (DLC)
          -v-                             :
                                          :        OPINION AND ORDER
HARRIS BEACH L.L.P.,                      :
                    Defendant.            :
-----------------------------------------X
```

Appearances:

Plaintiff Khatuna Batlidze, pro se:
Pinehurst Avenue, Apt. 5D
New York, N.Y. 10033
c/o David Apetz

For Defendant Harris Beach L.L.P.:
Stephen A. Fuchs
Lisa R. Norman
Littler Mendelson, P.C.
885 Third Avenue, 16th Floor
New York, NY 10022

DENISE COTE, District Judge:

Plaintiff Khatuna Batlidze ("Batlidze" or "plaintiff"), proceeding pro se, commenced this action against defendant Harris Beach L.L.P. ("Harris Beach") under the Americans with Disabilities Act ("ADA") on November 19, 2004.[1] The defendant filed a motion for summary judgment, which was denied by a Memorandum Opinion of August 9, 2006. Batlidze v. Harris Beach, LLP, 05 Civ. 86, 2006 WL 2280456 (S.D.N.Y. Aug. 9, 2006). Following a final pretrial conference on July 13, 2007, and

---
[1] Batlidze's complaint was received by this Court's Pro Se Office on November 19, 2004, and filed with the Clerk of Court on January 5, 2005.

subsequent supplemental discovery and depositions, defendant requested leave to file a renewed motion for summary judgment; that request was granted by Order dated October 26, 2007. The motion was filed on December 14, 2007, and plaintiff submitted opposition on February 22, 2008. For the following reasons, the defendant's renewed motion for summary judgment is granted.[2]

---

[2] By letter dated December 17, 2007, Batlidze requested that Harris Beach's counsel -- the law firm Littler Mendelson, P.C. -- recuse itself because Stephen A. Fuchs, a partner at Littler Mendelson who has appeared as defense counsel here, is married to a partner at Harris Beach, the defendant in this action. Batlidze argues that because Mrs. Fuchs was "a partner at Harris Beach during my entire employment there" she is "a material witness to my case and her relationship with her husband creates a serious conflict of interest." The defendant has opposed this request, noting particularly that (1) Mrs. Fuchs has never before been identified as a potential witness by either party during the course of this litigation, including in the lengthy list of potential witnesses provided by the plaintiff prior to the pretrial conference in July of 2007; (2) plaintiff does not in fact assert that Mrs. Fuchs possesses any specific information material to this action; and (3) the relationship between Mr. and Mrs. Fuchs does not create a conflict of interest in any event.

"The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994). District courts may exercise that discretion "where necessary to preserve the integrity of the adversary process in actions before them," Bd. of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), such as "when it is likely that the testimony to be given by [counsel] is necessary." Purgess, 33 F.3d at 144 (citation omitted). See also Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). Courts are generally "reluctan[t]" to grant a request by an opposing party to disqualify her adversary's counsel, however, due to the prejudice that would be caused to the adverse party by being deprived of its counsel of choice, the inevitable delay that would result, and the recognition "that disqualification motions

BACKGROUND

The following facts are undisputed or based on the evidence viewed in the light most favorable to the plaintiff, unless otherwise noted.[3] Plaintiff Batlidze was born in Tbilisi, the capital of the Republic of Georgia. Following a visit to the United States for a vacation in 1990, she returned to the United States on August 2, 1992. According to the deposition testimony of Dr. Alan H. Friedman ("Dr. Friedman"), plaintiff's ophthalmologist, plaintiff had suffered from non-Hodgkin's lymphoma prior to arriving in the United States, and had initially received treatment abroad. Following her 1992 arrival in the United States, she sought further treatment at Mount Sinai Hospital in New York, and was treated with chemotherapy, radiotherapy, and a bone marrow transplant.

Following her 1992 arrival in the United States, plaintiff applied for permanent resident status, and her application was denied; she was, however, able to obtain a stay of deportation

---

are often interposed for tactical reasons." Purgess, 33 F.3d at 144. The plaintiff having failed to raise a significant concern that either Mr. or Mrs. Fuchs would be required to testify in this action, and having failed to identify any other source of a potential conflict of interest affecting either Mr. Fuchs or Littler Mendelson as a whole, her request to have defense counsel removed from this action is denied.

[3] As it is based upon a more fully developed record, this account differs in some respects from that given in the Memorandum Opinion addressing the initial summary judgment motion. See Batlidze, 2006 WL 2280456, at *1-2.

based upon her medical condition.[4]  She also obtained an Employment Authorization Card from the Immigration and Naturalization Service.  A copy of the most recent Authorization Card Batlidze received has been submitted by the defendant, and it states that it was valid between May 2, 2000 and May 1, 2001.  Batlidze testified at her deposition that her application to renew her 2000-2001 authorization was denied, and that she never obtained a subsequent authorization.

Batlidze was hired by defendant Harris Beach as a file clerk in May of 2000.  Batlidze states in her opposition papers that she "kept defendant Harris Beach informed at all times about my immigration and work authorization status," and that "[w]hen I volunteered that my work permit was no longer valid, they told me not to worry about it."

On November 2, 2000, Batlidze had her initial visit with Dr. Friedman, at which Dr. Friedman noted marked swelling of her eyelids and masses in both eye sockets.  Following additional tests, she was diagnosed with lymphoma, and underwent radiotherapy in January of 2001.

In September 2002, Batlidze was assigned to work on Harris Beach's microchip litigation team.  Beginning in November 2002,

---

[4] The only such stay that has been documented by submissions to the Court is a stay obtained from August 19, 1998, to September 23, 1998.  In her opposition to the motion for summary judgment, however, she reports that "Immigration allowed me to stay in the country indefinitely."

she was required to scan a large number of documents on a computer, and worked late for several weeks. During this time, she returned to Dr. Friedman, who noted "marked irritation of the eye." Although Dr. Friedman's notes from the November 2002 visit mention her scanning work, he testified that he did not advise her to stop scanning or using a computer. In her opposition papers, Batlidze denies that she complained to Dr. Friedman or any one at Harris Beach -- at that time or ever -- that the scanning or computer work bothered her eyes. By contrast, Kim Swetland ("Swetland"), Harris Beach's New York office manager, avers that in February 2003 Batlidze complained that the scanning work was bothering her eyes.

Due to personality conflicts between Batlidze and at least one other member of the microchip litigation team, Harris Beach transferred Batlidze to its asbestos litigation team in April 2003, which at that time had two other clerks assigned to it. Also around that time, Batlidze told Swetland that she would be on medical leave in May to have laparoscopic surgery (which was unrelated to her eye problems). Batlidze was told that she would begin work with the asbestos litigation team upon her return.[5] Swetland avers that the transfer was viewed by Harris Beach as a step that would alleviate the discomfort she had

---

[5] Swetland avers that Batlidze had already begun work on the asbestos team prior to her departure in May.

5

reported in connection with her scanning work.  Batlidze, again, denies making such complaints and reports that upon being told in April that she would be transferred to the asbestos team, she "immediately asked [Swetland] to transfer me to any other department . . . because Asbestos was the largest filing project at Harris Beach and thus required extensive filing of documents which contained a lot of paper dust."  Batlidze states that she was told that a possible reassignment would be discussed upon her return in June.

Batlidze returned to Harris Beach from her medical leave in June 2003.  The parties offer differing accounts regarding who approached whom, but it is undisputed that Batlidze and Swetland had a conversation in early June during which Batlidze said that, due to the lymphoma she had had in her eyelids, the dusty asbestos files were bothering her eyes, and that she was not able to work on the asbestos team.  Swetland asked Batlidze to provide a letter from her ophthalmologist regarding her condition.

In response to Swetland's request, Dr. Friedman sent a letter to Swetland on June 6, 2003, and reported that while radiation therapy had cured Batlidze's lymphoma, the treatment had "left her with severe dry eyes."  He reported that he had last examined Batlidze on June 5, that her condition had gotten "considerably worse" since her prior visit, and that she

suffered from blurred vision, redness and extreme discomfort in her eyes. He recommended that Batlidze "temporarily refrain from filing which involves exposure to dust," and "highly recommend[ed]" that she "be given duties other than filing." Swetland avers that, "[a]fter receiving this letter I told Ms. Batlidze to refrain from any work activities that irritated her eyes."[6]

Swetland replied to Dr. Friedman by letter dated June 23, which stated that

> [b]ased upon the information you have provided, we are unable to ascertain whether there are any duties or responsibilities which we can provide Ms. Batlidze without exacerbating her eye problems.
>
> Ms. Batlidze is employed as a file coordinator. The duties of this position include: collecting, alphabetizing and filing [various documents]; retrieving files from our file room; creating files . . .; scanning of documents into the computer as necessary; other related filing duties. For a period of time, we did assign Ms. Batlidze to computer duties (scanning) only, but she indicated that this was causing pain and irritation to her eyes as well.
>
> In short, it does not appear that there are any duties or responsibilities that this employee can perform consistent with the limitations of her disability. Can you advise us of the prognosis involved in her condition, that is, is this a temporary condition from which she should be able to resume her full duties in the near future; or, do you expect that she will be permanently disabled from

---

[6] Batlidze also alleges that, in June 2003, although other Harris Beach employees were given annual reviews and salary increases, she received neither, despite filling out the required "self-evaluation form" on June 16, 2003, a copy of which is included in her opposition papers.

7

performing the regular job duties we have described above?

Dr. Friedman responded by letter on July 2, and stated that, "I believe that it would be in Ms. Batlidze's best interests for her to be assigned to [a] computer-linked desk job for the next 3 months. . . . If she is not spontaneously better by that time then I will fit her with a type of bandage contact lens." The letter concluded, "Your patience is commendable. I know that you have a job to do. Please bear in mind that Ms. Batlidze's condition is in no uncertain terms [not] psychosomatic or any form of malingering."

Swetland avers that she was "confused" by this recommendation given the statement in her June 23 letter regarding Batlidze's discomfort with computer work, and that no computer-linked desk job was available to which Batlidze could be transferred in any event. It is undisputed that no such transfer ever occurred.[7]

In August of 2003, Batlidze states that she had a meeting with Swetland and Mario Dibono, Harris Beach's Director of Human Resources, who recommended to Batlidze that she go on long-term disability, during which she would receive 66% of her salary, but not medical benefits. Batlidze declined this offer. Toward

---

[7] Swetland does aver, however, that she again told Batlidze to avoid any work that bothered her eyes.

the end of August,[8] Batlidze was told by Swetland that she was being fired.  Batlidze was presented with a Separation Agreement, dated August 26, 2003, which offered Batlidze seven weeks' wages and 180 days of medical benefits in exchange for, <u>inter alia</u>, a release and waiver of any claims against Harris Beach.  Batlidze did not sign the agreement.

It is undisputed that the other two clerks on the asbestos litigation team were also fired in August of 2003.  Swetland avers that these actions were taken "due to concerns about the performance of the file clerks on the Asbestos litigation team," and that the firm had "decided to outsource" the team's work to another company.[9]

On May 17, 2004, Batlidze filed a claim with the Equal Employment Opportunity Commission ("EEOC"), which was dismissed on August 31, 2004.  This action followed.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[8] Swetland avers that the date was August 23, and Batlidze states that it was August 26.

[9] Batlidze reports, by contrast, that she was later told by several Harris Beach employees that "the firm had hired two new clerks for Asbestos filing cases."  Such evidence is inadmissible hearsay, however.

9

a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims or defenses cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed. R. Civ. P.; accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). Only disputes over material facts, facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248. Finally, in applying these standards here, it should also be noted that plaintiff Batlidze is proceeding pro se, and that this Court has an obligation to read her submissions liberally and interpret them to raise the strongest arguments that they suggest. See, e.g., Wright v. Comm'r, 381 F.3d 41, 44 (2d Cir. 2004).[10]

---

[10] It should also be noted at the outset that before an individual may bring an ADA suit in federal court, "the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." Williams

Batlidze claims that Harris Beach discriminated against her in violation the ADA (1) by refusing to make a reasonable accommodation to allow her to continue working despite her eyesight problems, and (2) by terminating her employment in August of 2003.  "ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green."  Sista, 445 F.3d at 169 (termination claim); see also Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 & n.3 (2d Cir. 2004) (accommodation claim).  See generally McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, "[a] plaintiff suing under the ADA for disability discrimination bears the burden of establishing a prima facie case," Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 183-84

---

v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5); see also 42 U.S.C. § 12117(a) (applying the procedural requirements of § 2000e-5 to ADA claims).  "In addition, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC."  Williams, 458 F.3d at 69.  This timeliness requirement "is analogous to a statute of limitations."  McPherson v. New York City Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006) (citation omitted).  As discussed on the record at the pretrial conference held on July 13, 2007, because Batlidze filed her EEOC claim on May 17, 2004, her ADA claims in this action are limited to actions taken by the defendant on or after July 21, 2003, that is, during the plaintiff's last month of employment.  The parties do not dispute this date here.

(2d Cir. 2006), the specific formulation of which varies slightly in accommodation and termination cases.

"In [a] so-called reasonable-accommodation case[] . . . the plaintiff's [prima facie] burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Id. at 184 (citation omitted). Where the accommodation in question is a transfer to another position, the plaintiff "bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time he sought transfer." Jackan v. New York State Dep't of Labor, 205 F.3d 562, 567 (2d Cir. 2000).

Where a plaintiff claims that his employment was terminated in violation of the ADA, by contrast, he must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Sista, 445 F.3d at 169. "[T]he plaintiff bears the burden of production and persuasion on the issue of whether she is otherwise qualified for the job in

12

question." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137-38 (2d Cir. 1995).[11]

Harris Beach argues that summary judgment is appropriate because Batlidze cannot establish all of the required elements of her prima facie case with respect to either her accommodation or termination claim. Specifically, Harris Beach maintains that Batlidze has not shown that, with or without reasonable accommodation, she would have been able to perform the "essential functions" of either her file clerk position or the "computer-linked desk job" suggested as an accommodation by Dr. Friedman.[12] Moreover, although the parties dispute whether Batlidze ever told Harris Beach that computer-based work also bothered her eyes -- thus rendering a transfer to a "computer-linked desk job" an unsuitable accommodation -- Harris Beach maintains that this factual dispute is irrelevant because a

---

[11] "If plaintiff establishes a prima facie case, the burden of production shifts to defendant, who must articulate a legitimate nondiscriminatory reason for its challenged actions. If defendant carries this burden . . . plaintiff must then prove that defendant's actions were motivated by impermissible discrimination." Rodal, 369 F.3d at 118 n.3. The defendant has only challenged the plaintiff's prima facie showing, however, and thus it is not necessary to address the subsequent steps of the McDonnell-Douglas framework.

[12] Put differently, Harris Beach argues that Batlidze can establish neither (1) that "with reasonable accommodation, [she] could perform the essential functions of the job at issue," Graves, 457 F.3d at 183-84, or (2) that she "was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation," Sista, 445 F.3d at 169.

13

"computer-linked desk job" was not available in July or August of 2003, and any failure by Harris Beach to create such a position in order to accommodate Batlidze's condition did not violate the ADA.

In opposition, Batlidze emphasizes (1) that "Harris Beach ignored Dr. Friedman's recommendation for a suitable accommodation for me," (2) that, more broadly, "Harris Beach . . . never accommodated me" in any way, and (3) that "I did in fact suffer an adverse employment action on account of my disability, such as being fired." She does not dispute, however, that she told Swetland that she was no longer able to work on the asbestos litigation team, or that Dr. Friedman "highly recommend[ed]" that she "be given duties other than filing." Furthermore, Batlidze does not identify any available position to which she could have been transferred -- including any "computer-linked desk job" or a position on a different litigation team -- or suggest any other kind of accommodation that Harris Beach could have made available to her but did not.

Based on the current record, summary judgment must be granted in favor of the defendant. Although Batlidze repeatedly asserts that Harris Beach failed to accommodate her disability, she has only identified one accommodation that she contends should have been made on her behalf: assignment to a "computer-linked desk job." Harris Beach's New York office manager has

averred, however, that no such position was available during the relevant time period, and Batlidze, who "bears both the burden of production and the burden of persuasion on" this issue, Jackan, 205 F.3d at 567, does not offer evidence to the contrary. Although "[t]he ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation," the statute "does not require creating a new position for a disabled employee," Graves, 457 F.3d at 187, and "an employer need not reassign an employee if no position is vacant." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999). Having offered no evidence that a vacant "computer-linked desk job" was available during the relevant period, and having identified no other potential reasonable accommodations that Harris Beach could or should have made on her behalf, cf. 42 U.S.C. § 12111(9)(B), summary judgment is appropriate on Batlidze's failure-to-accommodate claim.

With respect to Batlidze's claim that her employment was terminated because of her disability in violation of the ADA, she likewise "bears the burden of production and persuasion on the issue of whether she is otherwise qualified for the job in question." Borkowski, 63 F.3d at 137. "Although the phrase 'otherwise qualified' is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear: an individual is otherwise qualified for a job if

she is able to perform the essential functions of that job, either with or without a reasonable accommodation." <u>Shannon v. New York City Transit Auth.</u>, 332 F.3d 95, 99-100 (2d Cir. 2003) (citation omitted). Batlidze does not contend, however, that she is or was "otherwise qualified" to continue working as a file clerk on the asbestos litigation team. As Batlidze reports in her opposition papers, she told Swetland in June 2003 that because of the condition of her eyes and the "huge amount of dust" on the asbestos litigation files, she was "unable to work in the Asbestos Litigation Unit."[13] The exchange of letters between Dr. Friedman and Swetland in June and July of 2006 also confirms this account. Thus, it is undisputed that Batlidze was

---

[13] In the papers submitted in connection with the defendant's prior motion for summary judgment, the parties disputed whether Batlidze was informed of an opportunity to apply for a job with the company to which the asbestos litigation filing work had been outsourced, Browne Business Solutions ("BBS"). <u>See</u> <u>Batlidze</u>, 2006 WL 2280456, at *1-2. Neither party has raised this issue in connection with the instant motion, but it may be noted that the work to be performed by BBS was identical to the work Batlidze was already performing, <u>i.e.</u>, filing asbestos litigation files. Thus, to the extent that Batlidze has claimed that Harris Beach's failure to inform her of her opportunity to apply for a position with BBS was an "adverse employment action," such a claim nevertheless fails because Batlidze cannot show that she was otherwise qualified to be offered or to accept such a position. <u>See generally</u> 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a <u>qualified individual with a disability</u> because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ." (emphasis added); <u>id.</u> § 12111(8) (defining "[q]ualified individual with a disability" as, <u>inter alia</u>, one who "can perform the essential functions of the employment position that such individual holds <u>or desires</u>" (emphasis added)).

not qualified to continue working in the position she held in
mid-2003, and Batlidze, again, has not identified a reasonable
accommodation that might have rendered her qualified to perform
the essential functions of that or any other available position.
Batlidze not having satisfied her burden of production on this
issue, summary judgment must be granted to the defendant on this
claim as well.

In sum, although the parties' accounts of the events at
issue conflict on certain points, as noted above, only disputes
over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment, Anderson, 477 U.S. at 248, and employment
discrimination cases are no exception to this rule. Weinstock
v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Here, Harris
Beach has demonstrated that Batlidze's ADA claims "cannot be
sustained," and Batlidze was required, in opposition, to "set
forth specific facts showing that there is a genuine issue for
trial," and cannot rest on the "mere allegations or denials" in
her pleadings. Rule 56(e), Fed. R. Civ. P.; accord Sista, 445
F.3d at 169. Having provided insufficient evidence admissible
at trial to support her claims, summary judgment must be granted
to the defendant.[14]

---

[14] Accordingly, there is no need to address the defendant's
arguments with respect to the damages Batlidze would be entitled

17

CONCLUSION

The defendant's motion for summary judgment, filed on December 14, 2007, is granted. The Clerk of Court shall enter judgment for the defendant, terminate any other pending motions as moot, and close the case.

SO ORDERED:

Dated: New York, New York
May 8, 2008

_____
DENISE COTE
United States District Judge

---

to recover due to her failure to obtain a renewal of her work authorization.

COPIES SENT TO:

Khatuna Batlidze  
c/o David Apetz  
200 Pinehurst Avenue, Apt. 5D  
New York, NY 10033

Stephen A. Fuchs  
Littler Mendelson, P.C.  
885 Third Avenue, 16th Floor  
New York, NY 10022